UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOMADIX, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., <br><br> Defendants. | Case No.: 2:19-cv-04980-AB (FFMx) <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS [DKT. NOS. 146, 148, 152]** |

Before the Court is Plaintiff Nomadix, Inc.'s ("Nomadix") Motion for Attorneys' Fees and Costs. ("Motion," Dkt. Nos. 146, 148, 152). Defendant Guest-Tek Interactive Entertainment Ltd. ("Guest-Tek") filed an Opposition to Nomadix's Motion (Dkt. Nos. 160, 164), and Nomadix filed a Reply. (Dkt. Nos. 170-2, 173). The Court deemed the matter appropriate for decision without oral argument and vacated the hearing scheduled for June 5, 2020. L.R. 7-15. For the following reasons, the Court **GRANTS** the Motion.

**I. BACKGROUND**

The parties share a long and extensive history, which the Court detailed in its

1.

previous orders in this action. The underlying action arose from a License Agreement between the parties, which provides, in relevant part:

> 8.10 <u>Forum Selection</u>. Subject to clauses 7.1 and 7.2, all disputes arising out of or in connection with this Agreement shall be brought in the United States District Court for the Central District of California ("District Court") and the Parties each consent to the personal jurisdiction of that court. The Parties each waive all objections to venue and all *forum non conveniens* objections with respect to such District Court and the Parties shall not contest the personal jurisdiction of such District Court or that venue is proper in such District Court. To the extent that any dispute arising out of this Agreement may not be brought in the District Court, such dispute shall be brought in a California Superior Court in Los Angeles County or Orange County ("Superior Court") and the Parties each consent to the personal jurisdiction of such Superior Court. The Parties each waive all objections and all *forum non conveniens* objections with respect to such Superior Court and the Parties shall not contest the jurisdiction of such Superior Court or that venue is proper in such Superior Court, except that any Party may make any objection favoring litigation in the District Court. **The Parties agree that the prevailing Party in such District Court or Superior Court action will be entitled to reimbursement by the losing Party for any and all legal fees and costs incurred by the prevailing Party in preparing for and conducting such action**.
>
> (Compl. ¶ 10, Dkt. No. 1) (emphasis added).

Nomadix filed this action alleging that Guest-Tek breached the License Agreement because Guest-Tek petitioned the United States Patent and Trademark Office's (PTO) Patent Trial and Appeal Board (PTAB) for *inter partes* review of five patents licensed under the License Agreement.[1] (*See generally* Compl.). The Court

---

[1] The five *inter partes* review proceedings spanned over the course of several months.

2.

granted Nomadix's motions for summary judgment and a permanent injunction. (Dkt. Nos. 113, 121). The Court entered judgment in favor of Nomadix, the prevailing party in this action.[2] (Dkt. No. 129). Nomadix now moves under Cal. Civ. Code § 1717(a) and the License Agreement for an award of attorneys' fees in the amount of $1,228,633 and for $400 in taxable costs.[3] ( Dkt. Nos. 146, 148, 152).

## II. LEGAL STANDARD

"State law governs whether a party is entitled to attorney's fees in diversity cases such as this one." *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013). In California, awards of attorneys' fees in actions on a contract are governed by Cal. Civ. Code § 1717. *See Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 237, 149 Cal. Rptr. 3d 440 (2012).

Under Cal. Civ. Code § 1717(a), the prevailing party of an action brought to enforce a contract that specifically provides for attorney's fees and costs can recover reasonable attorney's fees and costs.

## III. DISCUSSION

Nomadix seeks $1,228,633 in attorneys' fees and costs pursuant to section 1717 and the License Agreement. (Mot. at 8). Guest-Tek opposes Nomadix's request and argues that the fees should be significantly reduced because the request is excessive, unreasonable, and outside the scope of the License Agreement.[4] To support its

---

The first was initiated on September 5, 2018 and the last was initiated June 18, 2019—which was *after* Nomadix filed this lawsuit and sought a preliminary injunction. (Mot. at 2-3; Dkt. Nos. 1, 16).

[2] Guest-Tek appealed the Court's judgment, but after fully briefing the Motion for Attorneys' Fees and Costs, the parties stipulated to a voluntary dismissal of the appeal at the Ninth Circuit. (Dkt. Nos. 132, 169).

[3] The amount requested in Nomadix's Application to the Clerk to tax Costs against Guest-Tek is $400—the cost of filing this action. (Dkt. No. 148); *see* Fed. R. Civ. P. 54(d)(1).

[4] In its Opposition, Guest-Tek primarily argues that the Court should defer

3.

position, Guest-Tek raises several arguments, which include that Nomadix is not entitled to: (1) *inter partes* review (IPR) fees; (2) in-house counsel fees; (3) an unsuccessful preliminary injunction motion's fees; and (4) administrative tasks fees. (Opp'n at 7-14). Guest-Tek also advocates for a ten percent reduction of any awarded fees. (Opp'n at 14). The Court addresses each argument in turn.

**(1) IPR Fees**

    **a. IPR Proceedings**

Guest-Tek contends that Nomadix is not entitled to recover fees for the five IPR proceedings because they are USPTO Patent Trial and Appeal Board "administrative agency action[s]," and the License Agreement provides only for recovery of fees for "District Court or Superior Court action[s]." (Opp'n at 1, 8).

As the Court already addressed in its previous order, Guest-Tek's PTAB filings—the IPR proceedings—have a connection to the License Agreement. (Dkt. No. 113). The Court already determined that the IPR proceedings constituted a breach of the License Agreement, which Nomadix sought to enforce through this action. (Dkt. No. 113). Guest-Tek continued to pursue these IPR proceedings, despite Nomadix's filing of this action and attempts to enjoin Guest-Tek. (Mot. at 2–4; Dkt. No. 129). As a result, Nomadix incurred fees and costs to defend itself in the IPR proceedings until this Court determined it to be the prevailing party and granted its summary judgment motion and permanent injunction against Guest-Tek. (Mot. at 2–4; Dkt. No. 113; Dkt. No. 129).

For purposes of section 1717, when a contract "provides for an award of fees incurred in enforcing the contract, the prevailing party is entitled to fees for any action 'on the contract,' whether incurred offensively or defensively." *Turner v. Schultz*, 175

---

consideration on Nomadix's Motion for Attorneys' Fees and Costs pending the Ninth Circuit appeal. (Opp'n at 5-6). However, that argument is omitted from the Court's analysis because the parties subsequently stipulated to the voluntary dismissal of the appeal. (Dkt. No. 169).

Cal. App. 4th 974, 979–80, 96 Cal. Rptr. 3d 659 (2009) (citing *Shadoan v. World Sav. & Loan Ass'n*, 219 Cal. App. 3d 97, 107, 268 Cal. Rptr. 207 (1990)).

Guest-Tek's location-focused argument differentiating between courts and the PTAB is unavailing, especially since it was Guest-Tek that initiated the five IPR proceedings at the PTAB in violation of the express terms of the License Agreement. (Opp'n at 7–8). Nomadix is entitled to recover fees for the IPR proceedings in which it defended itself while it sought enforcement of the License Agreement through this lawsuit.

### b. Expert Fees

Guest-Tek also argues that $125,870 of Nomadix's requested IPR fees are for IPR experts and should be excluded from Nomadix's fee award. (Opp'n at 10). The Court agrees.

Typically, "attorney fees and expert witness fees are viewed as distinct and independent subsets of the costs of litigation."[5] *Olson v. Auto. Club of S. Cal.*, 42 Cal. 4th 1142, 1148, 74 Cal. Rptr. 3d 81 (2008) (citations omitted). And when a contract provides for attorney fees, expert fees are not recoverable as an element of costs. *See Robert L. Cloud & Assocs., Inc. v. Mikesell,* 69 Cal. App. 4th 1141, 1154, 82 Cal. Rptr. 2d 143, (1999), *as modified* (Feb. 11, 1999). Accordingly, the requested expert fees in the amount of $125,870 will be excluded from Nomadix's total award.

### (2) In-House Counsel Fees

Guest-Tek argues that Nomadix is not entitled to fees for in-house counsel Kelly Hughes because he acted as a corporate liaison and was not an active member of the trial team. (Opp'n at 10). Guest-Tek points to some of Hughes's time entries to show that he was not involved in "active trial preparation work." (Opp'n at 11).

Nomadix concedes that the time entries Guest-Tek takes issue with comprise

---

[5] Nomadix raises an unmeritorious argument that "federal law governs awards of expert fees" here, even though "state law governs attorneys' fees in a diversity case." (Reply at 9). As the Court already stated, California law applies here.

$18,800 of its requested fees. (Reply at 10). However, Nomadix opposes a categorical exclusion of recovery of in-house counsel fees and asserts that Hughes actively participated in developing case strategy at every stage of the case. (*Id*.). Ultimately, Nomadix is entitled to recover fees for its in-house counsel because courts "discern no basis for discriminating between counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer. Both are bound by the same fiduciary and ethical duties to their clients. Both are qualified to provide, and do provide, equivalent legal services. And both incur attorney fees and costs within the meaning of Civil Code section 1717 in enforcing the contract on behalf of their client." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1091, 95 Cal. Rptr. 2d 198 (2000), *as modified* (June 2, 2000) (internal citations omitted). The Court will assess the reasonableness of Hughes's fees in its lodestar calculation.

### (3) Unsuccessful Preliminary Injunction Motion's Fees

Guest-Tek argues that Nomadix is not entitled to recover fees incurred for work on a preliminary injunction motion that was denied. (Opp'n at 12). Specifically, Guest-Tek insists that Nomadix should not recover $130,053 incurred from June through September 2019, what Guest-Tek labels as the "preliminary injunction phase" of the case. (Opp'n at 12-13). Guest-Tek's argument is unavailing.

"A trial court has discretion to award all or substantially all of the plaintiff's fees even if the court did not adopt each contention raised." *Wysinger v. Auto. Club of S. Cal.*, 157 Cal. App. 4th 413, 431, 69 Cal. Rptr. 3d 1 (2007) (quoting *Downey Cares v. Downey Cmty. Dev. Comm'n*, 196 Cal. App. 3d 983, 997, 242 Cal. Rptr. 272 (1987)). It is well-established that plaintiffs "are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit . . . Just as time spent on losing claims can contribute to the success of other claims, time spent on a losing stage of litigation contributes to success because it constitutes a step toward victory." *Cabrales v. City of L.A.*, 935 F.2d 1050, 1052 (9th Cir. 1991). And "a plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her

ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Id*. at 1053.

Here, Nomadix's motion for a preliminary injunction was a necessary step that led to Nomadix's ultimate victory in the lawsuit. Nomadix ultimately obtained a permanent injunction against Guest-Tek and became the prevailing party in this lawsuit. (Dkt. No. 129). Thus, Nomadix is entitled to recover fees incurred during the "preliminary injunction phase" of this lawsuit.

**(4) Administrative Tasks Fees**

Guest-Tek argues that four of Nomadix's times entries after September 2019, which account for $3,453 in fees, are unreasonable because they reflect administrative tasks and "should be excluded from any fee award." (Opp'n at 13-14). The tasks Guest-Tek identifies include: voluntarily withdrawing a motion to quash, coordinating deposition locations, placing an order for a transcript, and filing a notice of appearance. (*Id*.). Nomadix does not dispute the nature of these tasks, but rather takes issue with how Guest-Tek labels them, and vaguely asserts that these tasks constitute legal work that Guest-Tek mischaracterizes as "administrative tasks." (Reply 13).

However, labels are not dispositive. "Tasks which are clerical in nature are not properly billed as attorney fees but are overhead expenses absorbed by counsel. Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*, 305 F. Supp. 3d 1156, 1171 (D. Or. 2018), *appeal dismissed sub nom. League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 18-35731, 2019 WL 4453723 (9th Cir. Mar. 8, 2019) (internal citations omitted). The time entries Guest-Tek identifies appear to be clerical in nature, so their associated fees in the amount of $3,453 will be excluded from Nomadix's award.

///

7.

### (5) Ten Percent Reduction

Guest-Tek urges the Court to give Nomadix's fee award a "ten percent haircut" because Nomadix's invoices include "block entries," "double (or triple) entries," and "vague entries." (Opp'n at 15).

In response, Nomadix argues that it already incorporated a three percent reduction of its actual overall expenses, so the Court should not apply a ten percent reduction because that would result in a thirteen percent reduction.[6] (Reply at 14). Despite Nomadix's contention, the Court is not confined by arbitrary parameters Nomadix attempts to set. The Court has the authority to impose an across-the-board reduction up to ten percent "based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

#### a. Block Entries

Guest-Tek identifies three time entries that it argues constitute block billing. (Opp'n at 15). Two of the time entries identified—dated November 6, 2019 and November 11, 2019—include specific time allocations for each individual task listed within each time entry. (Opp'n at 15; Ex.1, Dkt. No. 150-3). This runs contrary to behavior typically deemed as block billing. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("[B]lock billing makes it more difficult to determine how much time was spent on particular activities.").

#### b. Double or Triple Entries

Guest-Tek also argues that Nomadix's invoices should be subject to a haircut because three time entries, all dated November 6, 2019, list work performed in

---

[6] The Court notes that in its Motion, Nomadix states that the three percent reduction accounts for fees incurred by Knobbe Martens attorneys and staff who "worked a relatively small number of hours each." (Mot. at 8). These are identified as "Other time billers" in the tables Nomadix submitted. (*Id*.) Thus, Nomadix's arbitrary three percent reduction does not account for vague entries, block entries, or any other issues Guest-Tek raised.

8.

connection to Nomadix's summary judgment motion. (Opp'n at 15; Ex.1, Dkt. No. 150-3). However, the three time entries are for three different attorneys and "[p]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). "Courts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication." *Id.* 1286–87. Here, it does not seem to be unreasonable for multiple attorneys to have worked concurrently on the motion for summary judgment.

### c. Vague Entries

Guest-Tek identifies two "vague" time entries: (1) "plan document production" and (2) "plan response to Guest-Tek's discovery requests [and] draft same responses" dated November 18, 2019 and November 20, 2019, respectively. (Opp'n at 15).

Nomadix asserts that because Guest-Tek "served only one set of interrogatories and one set of document requests that month," the time entries are sufficiently detailed to apprise Guest-Tek of the work performed. (Reply at 15). Other than those two entries, Guest-Tek has not identified any other "vague" entries for the Court to consider.

## IV. AWARD AMOUNT

### (1) Lodestar Calculation

The Ninth Circuit uses the "lodestar" method to determine the appropriate amount of attorneys' fees to award. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The lodestar is calculated by multiplying "the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Id.* The Supreme Court has "established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]" *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). While the lodestar amount is presumptively reasonable, a court may adjust it upward or downward based on the Kerr factors. *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997);

9.

*see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).[7]

Nomadix submitted over a hundred pages of invoices, cited cases in which other courts have found Nomadix's law firm's hourly rates to be reasonable, and provided relevant excerpts of the American Intellectual Property Law Association's (AIPLA) Report of the Economic Survey 2019. (Ex. 1, Dkt. No. 150-3; Mot. at 16-17; Declaration of William H. Shreve ("Shreve Decl.") Ex. 14, Dkt. No. 147). Having reviewed the documents provided, the Court finds the rates for the law firm's attorneys reasonable and commensurable with the average billing rates in the AIPLA Survey. But the rates proffered for in-house counsel Hughes are slightly higher than the average rates presented for attorneys with similar levels of experience in the AIPLA Economic Survey. (Mot. at 14-15; Ex. 14, Dkt. No. 147). Nomadix attributes this to Hughes's "unique and deep knowledge of the legal and strategic issues involving the present dispute and License Agreement" and involvement in the IPR proceedings. (Mot. at 15). Though Hughes's rates are slightly higher than Nomadix's law firm's partners' requested rates, they are not higher than the upper limits reported for attorneys with comparable IP law experience in the AIPLA survey. (Ex. 14, Dkt. No. 147). Thus, the Court finds the rates submitted to be reasonable and will not speculate as to whether "different staffing decisions might have led to different fee requests." *Moreno*, 534 F.3d at 1115.

The Court also finds the hours expended to be reasonable. "[T]he fee applicant

---

[7] The twelve *Kerr* factors bearing on the reasonableness are: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr*, 526 F.2d at 70.

bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, Nomadix's attorneys submitted contemporaneously prepared time entries for the time they spent on this matter, offering concrete and reliable evidence of the reasonable time spent on individual issues in this case. (*See* Shreve Decl. at Ex. 1). Having reviewed these time entries, the Court determines that they are sufficiently detailed and do not appear excessive.

**(2) Deductions**

Based on the foregoing analyses, the Court excludes $129,323—$125,870 for expert witness fees and $3,453 for administrative tasks fees—from Nomadix's requested fee award. The total amount requested was $1,228,633 and after the appropriate reduction of $129,323, the total amount awarded is $1,099,310.

**V. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Nomadix's Motion for Attorneys' Fees and Costs and **AWARDS** Nomadix a total of $1,099,310 in attorneys' fees and $400 in taxable costs.

Dated: August 6, 2020

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

11.